Thank you, Your Honor. Gregory Haynes for the plaintiff, Erris Edgerly. In this matter, this panel is required to follow the published opinion of a prior panel under the law of the circuit which is set forth in Gonzalez v. Arizona, the 2012 opinion. And it must follow the published opinion of the prior panel, in this case, Edgerly 2, unless there is a specific exception to that rule. In this case, the appellees have not presented any exception to the law of the circuit in this matter. In Edgerly 2, one of the issues that was decided by that court was that state law did not authorize the custodial arrest of Edgerly. The appellees have not set forth any exception to the law of the circuit as set forth in Gonzalez v. Arizona. In fact, the only issue in Edgerly for which there is an exception that would allow this panel to issue a ruling contrary to panel deals with the panel's decision that 602.8 of the California Penal Code applied to an urban setting. That's in paragraph 13, because they, that panel ruled that because unpublished opinions had applied 602.8 to non-rural circumstances that it would. But the rule requires the panel to follow what the California Supreme Court would do. And the California Supreme Court, in both its published dicta and in other appellate decisions, has clearly indicated that 602.8 does not apply to a rural setting. So actually, this court should not only require that the district court find, as the Edgerly 2 did, that state law does not authorize the custodial arrest of Edgerly, but also that 602.8 of the penal code does not apply to this particular case. And therefore, when the case is remanded, it should allow for the Fourth Amendment violation with regard to the false arrest to go forward not only individually, but under Monell as well, as the court had decided in Edgerly 1, which was withdrawn because of the court determined that it would follow the unpublished California cases, which the California rules under California Rule 8.1115 would bar the court from proceeding. So the essence of this case is that the trial court, which did not follow the panel decision with regard to finding that there was no basis under California law for custodial arrest, that was an error because it did not follow the panel. And the only exception would be if the California Supreme Court were so ruled. And they haven't. And that standard is set forth in Enry Watts, 2298 Fed 3rd 1077. But while we're here, since it's clear that the California Supreme Court would not apply 602.8 to a non-rule setting, the court should correct that ruling from the California Supreme Court, which is the one that was not approved by the California Supreme  And that's what we're going to do. We're going to come back from Edgerly 2, and I'll save the balance of my time for rebuttal unless the Court has a question. Kagan. I have a question, counsel. Assuming, for the sake of argument, we agree with you with regard to the false arrest claims, how does that taint the verdict with regard to the strip search claims? Oh, the evidence that came in under the false arrest claim was detrimental to the false to the search claim, and part of that dealt with just the credibility of the plaintiff once it was addressed, once the search claim was addressed. Part of the evidence that came in under the court's interpretation of the custodial arrest was proper was what was in the mind of the officers. And so the court allowed motive testimony to determine whether the custodial arrest was proper, and that motive testimony also went over to the search claim to give the jury the impression that it wasn't an objective standard that determined how they should respond, but instead what was in the mind of the attorneys, or what was in the mind of the officers. And the court allowed just an extraordinary amount of information that was negative towards the plaintiff. For example, the court allowed a large amount of evidence with regard to gang activity and how the officers felt about this, and just a great amount of evidence that would make it difficult for the jury to support the plaintiff, and more importantly, rule against the officers, because there was a great deal of sympathy for the officers as a result of the court allowing the mindset of the officers to determine whether or not a custodial arrest was proper. And so I think this caused a substantial taint in the record, which was indicated at the time, because with regard to the custodial arrest, the way that the court had allowed it, if the officer thought in his mind that he should take the person to the police station to do his research, to find out whether or not there was a stay-away order, if that was in his mind, then that was something that would allow the custodial arrest. The plaintiff should have simply conceded the arrest rather than argue that it was not in his mind, that he did not take him to the police station in order to do a – to search to see whether he had a stay-away order, because it undermined, in this instance, the credibility of the plaintiff and plaintiff counsel. Because the court – the way that the matter was submitted to the jury, the jury had to find for the defendants with regard to the arrest, and that just undermined the credibility as to the plaintiff with regard to the search condition. And also, the burden of proof that it was not tainted was undermined. The burden of proof that it was not tainted is on the defendant. This Court should assume that there was a presidential error under the case law, and that that burden of proving that there was not such a presidential error is on the defendant. And I'll save the rest of your time. Thank you. Thank you. Thank you. Good morning, Your Honors. Good morning. Sean Connolly, deputy city attorney for the City and County District of Delaware. Why don't you wait until you get up to the lectern before you start talking? Sean Connolly, deputy city attorney for the City and County of San Francisco and officers Goff and Connifre. Good morning. May I proceed? You may. The only issue, I believe, here today is whether or not the district court abuses discretion in instructing the jurors on the exceptions that were available under the cite and release law for misdemeanors, which is 853.6 in the California Penal Code. The panel should be reminded that in Edgerly 2, in the first trial, the issue of cite and release was never raised.  It was never raised in any pre-trial proceedings. It was never raised during trial. There was no testimony about it. There was no allegation by the plaintiff that there was any violation of the cite and release statutes, infraction, misdemeanor or otherwise. The Edgerly 2 panel was not briefed on it because it wasn't an issue at trial. There was no testimony at trial about it, and therefore there was no briefing on it before the Edgerly 1 and 2 courts. On remand, the district court looked to the Edgerly 2 opinion, and Edgerly 2 did not explicitly or implicitly resolve the issue of how to deal with whether or not there was a violation of the State law of cite and release procedures. Judge Breyer looked to the one statute that was cited by Edgerly 2, which was the cite and release statute for infractions, because Edgerly 2 found that there was a violation of an infraction and there was probable cause for an arrest for an infraction. The very first sentence of the cite and release statute for infractions refers to and incorporates the process and exceptions under the cite and release statute for misdemeanors. Kennedy, you're looking at it, I take it, at 853.5? I'm looking at it now. All right. It says except as provided by law? Correct. Okay. And at the end of the section, it says only if the arrestee refuses to sign a written promise, has no satisfactory identification, or refuses to provide a thumbprint or fingerprint may the arrestee be taken into custody. Your Honor, you're talking about the language at the end of that first paragraph? Yes. That refers to the vehicle code infractions. And there was discussion about this in the district court, and we briefed this issue. And one, there is a case, People v. Arnold, that was cited by the city and the officers and was relied on by Judge Breyer that makes 853.6 applicable under 863.5. First of all, that is cited in the brief, but the citation is 58 Calab III, sup 1, at footnote 2. Secondly, there is a case that is People v. Superior Court, open paren Murray, M-U-R-R-A-Y-M-P-A-R-E-N, 70 Calab III, 257, that addressed this issue and specifically found that the language under 853.5 and 853.6 did not, was not bound and did not apply to the vehicle code infractions listed under the statute, and specifically said that the vehicle code does not govern the arrest made under the penal code. And here, the arrest was made under the penal code. And to read this statute any other way would essentially render the very first sentence of 853.5 meaningless. And that's not how we interpret statutes. We have to give effect to statutes and read them in such a way that they're not read to either be meaningless or lead to absurd results. Well, counsel, there are at least two cases decided by California courts in Reed, Rudenach, and also People v. Williams, which went to go the contrary. Let's say you've got a -- these exceptions are the only exceptions, and you can't read that opening sentence as the definitive. Are you familiar with those cases? Well, I didn't hear the first one, but I heard Williams, and I'm familiar with Williams. And Williams is distinguishable, one, because, if I'm not mistaken, it's the case that dealt with parole searches, and it was specifically addressing a parole search and, two, that dealt with a vehicle code infraction. That was not a penal code. The statute addressed there was a vehicle code section 40,000.1, if I'm thinking of the same case. And that specifically is not -- I mean, that's what Murray says, that these -- the procedures under 853.5 and .6 don't apply to the vehicle code infractions or misdemeanors. The vehicle code infractions are the ones that set out the process for booking incitation under vehicle code infractions. This was an arrest for a misdemeanor under the penal code. I mean, an infraction under the penal code. That's how it's distinguished. Well, the California Court of Appeal in In Re Rotenac K, it's a 1995 case, views it differently, and I'm going to just read you part of the language of that case. For adults accused of violating penal laws, several types of release are possible. When an adult is arrested for an infraction, with the exception of a few specified vehicle code violations, the arresting officer requires that the person, and then it goes on to talk about presenting a driver's license or other evidence of identification, signing a promise to appear. And it quotes the language of the statute, which says, only if the person refuses to present identification or sign the promise to appear can he or she be taken into custody. That seems fairly clear. Your Honor, what case was that? I didn't hear you. In Re Rotenac R-O-T-T-A-N. Well, again, I believe it's distinguished because you're dealing with a vehicle code violation here in that case. And clearly, and the law is clear for certain types of vehicle code violations. There are only two exceptions if you're being cited under the vehicle code violation. And if you cannot present adequate ID or it will not, or if you refuse to allow yourself to be fingerprinted then and only then, can you be booked. But the statute, 853.5, 853.6, California caseload, interpreting those statutes for arrests under the penal code, clearly say that you can incorporate the exceptions as they are outlined under 853.6. And I would add, to interpret it any other way would lead to an absurd result. And what I mean by that is an officer, in our case, there were a number of exceptions that were put, evidence on a number of exceptions that were put to the jury. One of them was an issue of officer safety. And the officers testified to numerous factors governing officer safety. One, the area, the danger of the area, the fact that the area was governed by a certain very particular violent gang, that the person they were arresting they knew was associated with the gang. They had all this history making arrests there. Officers had been assaulted there. Prisoners had been lynched there. I would go on and on with the evidence, but I don't need to, because the jury found that there was a reason to transport the prisoner from the scene where he was arrested to the police station a short distance away because there was an officer safety concern. And it cannot be construed, these statutes, that the same two officers faced with the same dangers, vulnerable in the same way for a misdemeanor, that you can tell me that all those concerns and all that danger evaporates just because the thing that they are arresting the suspect for happens to be an infraction rather than a misdemeanor. That cannot be the case. I mean, these – it would – to interpret it that way would, again, as I say, render the statute meaningless, render the exceptions meaningless. How do you respond to counsel's argument regarding the taint with regard to the strip search claims, that because the Court allowed so much evidence regarding the officer's motivations for the false arrest claims, that that basically compromised the jury's ability to view the strip search claims separately? Well, I respond in a couple of ways. One, the plaintiff is supposed to show what the prejudice was, and the plaintiff has not shown any prejudice, has not pointed to any prejudice. Two, the issues in this case were so discreet and distinct. They were really entirely different issues. There were – one part of the case was – had to do with site and release law, California site and release law, and the – and evidence related to the exceptions that are outlined under those statutes. The second issue was strictly a factual issue on whether or not a strip search occurred, and there were two separate cases in one. They were discreet, they were different, there was – I don't believe there was any case or argument the plaintiff can make that evidence on the site and release statute and the exceptions under it somehow leaked into influence or prejudiced, which is the standard, the jury on their finding that there was no strip search. So that's how I would address that, Your Honor. Can I direct you back to the Ratanak case? I'm going to read you what it says. Again, I'm sorry, I didn't hear the case. For some reason, I'm having a hard time hearing it. Ratanak, O-R-T-T-A-N-A-K, In Re Ratanak. It's a 1995 Callap case. Okay. I'm going to read it to you. If you don't have it, I understand that. I want you to listen to what I read and then explain it, unless you have a copy of it. I don't have a copy of it. Okay. Can you let me go ahead then and not look through it? No, please read it, Your Honor, but I don't – it was not cited by plaintiff as far as I can tell. I'm citing it to you, counsel, and if you want the panel to be informed, this is your chance to give us an answer. Okay. If you want to waive it, we'll figure it out for ourselves. I'll give it a shot. Thank you. Thank you. That's the purpose of oral argument. Okay? Then you can do your best, and if we're still confused, we'll give you an opportunity to respond to it in writing. Okay. Okay? It says, for adults accused of violating penal laws, several types of release are possible. When an adult is arrested for an infraction, parenthesis, with the exception of a few specified vehicle code violations, the arresting officer requires that the person present a driver's license or other satisfactory evidence of identification and sign a promise to appear. Only if the person refuses to present identification or to sign the promise to appear can he or she be taken into custody, citing Penal Code Section 853.5. Willful violation of the promise to appear is a misdemeanor. Now, you have said that your reading of 835.5, that the last sentence that says, only if the arrestee refuses to sign a written promise, has no satisfactory identification, or refuses to provide a thumbprint or fingerprint, may the arrestee be taken into custody. The court of appeal does not seem to limit that to vehicle code violations, because by the very paragraph I've read, they are talking about penal laws, and then when they say when an adult is arrested for an infraction, with the exception of vehicle code, they must provide a proper identification or so on. So how do you reconcile those two? I – what I – the way I address that now is to refer back to what I said earlier, which is there clearly is authority for the position that the cite and release statutes for – under the penal code are governed by 853.5 and .3, and that's 853.6, given the plain language. There is – there are cases that say that 853.5 is limited to vehicle code infractions. My – my argument that when you try to reconcile and read the language to give effect to the statute, especially 853.6, you – you have to construe it in such a way that it incorporates 853.6 and excludes the vehicle code from the statute, because that's the only way that the statute is going to allow officers to use the vehicle code for arrest under the vehicle code, and allows officers to use the exceptions available to them under .6, because otherwise you – you're back to the same – you're back to the beginning where, in the instance I – I alluded to earlier, officers, you know, aren't any less safe or any less vulnerable under one of the exceptions in .6 just because they're making an arrest under an infraction under .5 or a vehicle code infraction. Again, I – I welcome the opportunity to look at that case and see if I can distinguish it further, and I will. If the Court will allow us. Kennedy, I don't understand how you distinguished it. You didn't distinguish it. I'm – I'm sorry. I can't hear you. I don't understand you. You did not distinguish it. Okay. Well, I haven't seen it, and I've done the best I can on that. Well, the best you can was nothing. All right. Well. If we need further information, we'll give you the opportunity to respond to it.  Thank you. All right. Thank you. Thank you. I just want to make just a couple points. The – the section, you know, clearly provides that if the individual does not have the identification, then under the code, the officer may arrest pursuant to the procedures for a misdemeanor. So that's where they would work together. If, in fact, the person does not have the – can't meet the requirements that the section provides for an infraction, then the misdemeanor arrest procedure would apply. And I wanted to just – I wanted to – Counsel, did you cite Williams or the Rodinac case? I cited Williams. I did not cite the Rodinac case. Okay. But the – the law of the circuit would require that this panel follow Edgerly 2. Now, Edgerly 2 didn't address the statutory interpretation, so don't hang all your argument on that. I'm – we want you to focus. Okay. If you have something to add on the interpretation of the statute, the cite and release statute, that's fine. But if you're just relying on what you've already argued in your brief, then you don't need to bother. Okay. And I would also note that it is true that the plaintiffs did not raise in the trial, the first trial, the issue of the arrest for an infraction. And the reason for that is the defendant didn't offer the arrest for an infraction as a defense to the unlawful arrest under 602L. Had they done so, then we would have addressed it at the trial. Now, in Edgerly, after the close of evidence, the court sua sponte determined that 602L was applicable, 602.8 was applicable, and without any argument or evaluation as to whether 602.8 applied. I think under – if the court were to predict what the California Supreme Court would determine, it would find that the California Supreme Court would not find that 602.8 applies to a urban setting. The appellate opinion in Edgerly at paragraph 13 determined that since unpublished cases had followed it, it would follow that state action. And that is in violation of the California Rules of Court 8.1115. And it also does not reflect what the California Supreme Court would do. And as such, the court should not only find that there was no basis for custodial arrest under state law, but that 602.8 does not apply. And it should, therefore, remand the case indicating that there is a Fourth Amendment violation for the false arrest as well as the Monell issue. All right. Thank you. Thank you. Thank you, counsel. The case is submitted.
judges: Noonan, Fisher, Nguyen